UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD A.,

                 Plaintiff,

     -v-

ANDREW SAUL
Commissioner of Social Security,

                 Defendant.
_____

1:19-CV-01146-MJR
DECISION AND ORDER

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case. (Dkt. No. 21).

       Plaintiff Donald A.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying his Disability Insurance Benefits ("DIB")

under the Social Security Act (the "Act"). Both parties have moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following

reasons, plaintiff's motion (Dkt. No. 15) is denied and defendant's motion (Dkt. No. 17) is

granted.

## BACKGROUND[2]

       Plaintiff filed an application for DIB on April 11, 2011 alleging disability since March

1, 2010 due to neck pain status post surgery, back pain, and right shoulder pain. (*See* Tr.

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.
[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

26, 117-23, 392).[3] Plaintiff's disability benefits application was initially denied on September 10, 2011. (Tr. 63-70). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Donald McDougall on November 16, 2012. (Tr. 33-53). ALJ McDougall issued an unfavorable decision on December 6, 2012. (Tr. 9-24). Plaintiff timely sought review of the decision by the Appeals Council and his request was denied. (Tr. 1-6). Plaintiff appealed to District Court and on January 27, 2016 the case was remanded for further administrative proceedings. (Tr. 448-62; *see [Donald A.] v. Colvin*, 14-CV-0861-JTC, 2016 U.S. Dist. LEXIS 10200 (W.D.N.Y. Jan. 28, 2016) (Curtin, J)).

Pursuant to this Court's order, on April 19, 2016, the Appeals Council remanded the case to an ALJ for further proceedings. (Tr. 471). On December 13, 2016, a new hearing was held before ALJ Bryce Baird. (Tr. 387-422). ALJ Baird heard testimony from plaintiff, who was represented by counsel, as well as from Roxanne Benoit, an impartial vocational expert ("VE"). (*Id.*). On July 5, 2017, ALJ Baird issued a decision that plaintiff was not disabled under the Act. (Tr. 363-86).

Following that unfavorable decision, plaintiff attempted to seek review by the Appeals Council. (Dkt. No. 1, ¶¶ 16-25). On June 27, 2019, the Appeals Council issued a notice finding that plaintiff had not timely filed exceptions to the ALJ's decision, or asked for more time to do so within the specified period, therefore the ALJ's decision was now the final decision of the Commission after remand by the Court. (Dkt. No. 1-8). The instant lawsuit was commenced by complaint filed on August 26, 2019, wherein plaintiff sought, *inter alia*, vacatur of the Appeals Council determination and the Court's allowance of this

---

[3] References to "Tr." are to the administrative record in this case.

civil action to proceed on the merits. (Dkt. No. 1). The Commissioner subsequently filed a motion for judgment on the pleadings addressing the merits of the case and providing no position on the procedural posture, other than stating that the ALJ's July 5, 2017 decision is the final decision of the Commissioner. (Dkt. No. 17-1, pg. 3). The Court concludes that the Commissioner has waived any procedural argument as to the timeliness of plaintiff's administrative appeal, and thus it will proceed with reviewing the merits of plaintiff's challenge.

Born on November 27, 1969, plaintiff was 40 years old on the alleged disability onset date and 46 years old on the date last insured. (Tr. 17, 117, 378). Plaintiff is able to communicate in English, has at least a high school education, and has previously worked as a material handler and forklift handler. (Tr. 378).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ found that plaintiff last met the insured status requirements of the Act on December 31, 2015. (Tr. 369). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of March 1, 2010.[4] (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) cervical disc disease status post discectomy and fusion and post microdiscectomy and placement of artificial cervical disc; (2) lumbar disc disease with herniated discs; (3) right shoulder injury, status post right shoulder arthroscopy with decompression and debridement of partial thickness rotator cuff tear and resection of AC joint; and (4) left shoulder injury, status post arthroscopy with extensive debridement of glenohumeral joint and decompression.[5] (Tr. 369). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 371). Before proceeding to step four, the ALJ assessed plaintiff's RFC through the date last insured as follows:

> [T]he [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that this person can lift and carry on occasion up to 10 pounds and lift and carry frequently up to five points. This person can sit for up to six hours in an eight-hour day and stand or walk up to four hours in an eight-hour day. This individual would have a sit/stand option that would allow him to sit for up to five minutes after twenty minutes of standing or walking. The individual would remain on-task whether sitting, standing, or walking. Additionally, this individual would be able to stand,

---

[4] At the hearing, plaintiff requested to amend his disability onset date to March 9, 2010. (Tr. 392). The amended date is not reflected in the ALJ's decision.

[5] Also at step two, the ALJ found that plaintiff suffered from left carpal tunnel syndrome and depression, which were determined to be non-severe impairments. (Tr. 369-70). Plaintiff does not challenge either of these determinations.

7

walk, or stretch for up to one minute after 30 minutes of sitting. The individual would not be on-task when standing, walking, or stretching. This individual would be limited to occasional use of hand controls with left and right hands. This individual would be limited to occasional climbing of ramps or stairs, no climbing of ladders, ropes, or scaffolds, occasional balancing, occasional stooping, occasional knelling, occasional crouching, no crawling. This person would be limited to frequent reaching and frequent overhead reaching with both the left and right arms. He would be limited to no repetitive neck movements, defined as neck movements that would have to be made over and over again without break for the periods during the work without the option to stop making those movements. This person[] would be limited to environments in which there is no exposure to excessive vibration, and this individual would be limited to jobs that would not require driving a vehicle. Additionally, this individual would be limited to no exposure to hazards such as unprotected heights or moving machinery.

(Tr. 371).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Benoit to conclude that plaintiff is unable to perform past relevant work given the limitations set forth in her residual functional capacity. (Tr. 378). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed. (Tr. 379). However, the ALJ assessed that plaintiff's ability to perform sedentary work is impeded by additional limitations. (Tr. 371, 379.) Proceeding to step five, and after considering testimony from VE Benoit in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as final assembler, sorter, and document preparer. (Tr. 379). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from March 1, 2010, the alleged onset date, through December 31, 2015, the date last insured. (Tr. 380).

IV.   *Plaintiff's Challenges*

   a.   *Collectively Weighing Opinion Evidence*

Plaintiff first argues that the ALJ committed legal error by failing to individually evaluate and weigh the opinions of plaintiff's treating physicians pursuant to this Court's remand order. For the following reasons, the Court finds no error in the ALJ's treatment of the opinion evidence under the rules.

An ALJ must evaluate every "medical opinion" in the record. 20 C.F.R. §404.1527(c); 416.927(c). A medical opinion is a statement from an "acceptable medical source[ ]," such as a licensed physician, "that reflect[s] judgment[ ] about the nature and severity of [the claimant's] impairments(s), including [his or her] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* §§404.1527(a)(1); 416.927(a)(1). Under the "treating physician rule," an ALJ must give controlling weight to a treating source's medical opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).[6] If the ALJ elects not to give a treating source's medical opinion controlling weight, he must consider certain factors in determining what weight to give the opinion, and "give good reasons" in his decision for the assigned weight. *Id.* §§404.1527(c)(2), 416.927(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998). Those factors include: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a

---

[6] This claim was filed before March 27, 2017, therefore 20 C.F.R. § 404.1527 is applicable.

whole; (4) whether the opinion is from a specialist; and (5) other factors [...] that tend to support or contradict the opinion. *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004).

This Court's prior remand order addressed the treating physician rule and plaintiff's claim that the ALJ erred in assessing plaintiff's RFC by not properly evaluating the weight to be given to his treating source opinions. Judge Curtin found that ALJ McDougall's December 2012 decision erred by not providing its reasoning for affording no weight to the opinions of treating providers, Drs. Grant and Lewis. *See* 2016 U.S. Dist. LEXIS 10200, at *18. The Court directed that "plaintiff was entitled to a comprehensive explanation of the reasons why the ALJ gave those opinions little, if any, weight in his assessment of the plaintiff's RFC." *Id.*

Here, ALJ Baird's July 2017 decision gave little weight to the opinions of Drs. Grant, Lewis, and Matteliano, but it did provide adequate explanations as to why they were not afforded controlling weight. (Tr. 376-77). While acknowledging that these doctors were treating providers, the ALJ found that each opinion was "inconsistent with the providers' treatment notes and the independent medical examination findings in the record." The ALJ gave detailed examples of how the treatment records conflicted with the physicians' opinions of "total" and "100%" disability. These inconsistencies included mild findings in diagnostic images, observations of generally normal ambulation, only mild positive findings of reduced range of motion and tenderness in physical examinations of cervical spine, lumbar spine, and right shoulder, and no major abnormalities shown in MRI or CT scans. The ALJ's consideration of these inconsistencies is directed by the regulations. *See* 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent [an] opinion is with the record as a whole, the more weight we will give to that

10

[ ] opinion."); *see also Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 7-8 (2d Cir. 2017) (summary order) (discounting of treating physician opinion appropriate where it contained internal inconsistencies and treatment notes contradicted RFC assessment). Further, the ALJ explained that these providers did not articulate how the plaintiff's medical impairments limited his ability to perform specific work tasks such as sitting, standing, walking, and lifting, and provided no objective evidence to support their findings of total disability. *See Marozzi v. Berryhill*, 6:17-CV-6864-MAT, 2019 U.S. Dist. LEXIS 20575, at *16-17 (W.D.N.Y. Feb. 8, 2019) (holding that the ALJ properly considered the lack of objective evidence supporting treating physicians' opinions when weighing those opinions). The ALJ also explained that the treating providers' conclusions about impairments were inconsistent with the detailed opinions as to limitations given by the independent medical examiners. The ALJ reasonably found the opinions of the independent examiners more consistent with the clinical findings. The ALJ also discussed the length of the treatment relationship and the frequency of plaintiff's visits with regard to each of these doctors. (Tr. 373, 375). The decision demonstrates that the ALJ properly considered the required factors and fully explained why he declined to give controlling weight to the opinions of Drs. Grant, Lewis, and Matteliano.

Plaintiff's contention that the ALJ was wrong to have spoken about the treating physicians collectively is not persuasive. The ALJ has an obligation to apply the regulatory factors to each opinion and explain his reasoning, but there is no requirement to restate the same reasoning repeatedly when it applies equally to more than one opinion. Plaintiff relies on *Colon Medina v. Commissioner of Social Security*, 351 F. Supp. 3d 295, 303 (W.D.N.Y. 2018) (Wolford, J), for the holding that collective consideration of multiple

11

medical opinions may constitute error. There, the Court gave limited weight to several sources, including opinions from two treating physicians, without demonstrating individual consideration of the opinion evidence. *See id.* at 302-03. The Court found error in the ALJ's failure to specifically mention the names of several medical sources, indicating that he may not have even considered them. Further, because of the ALJ's cursory explanation that some of the reports were vague while others were based on plaintiff's subjective complaints, the Court could not meaningfully review how the ALJ weighed each opinion. The decision here is distinguishable from that of *Colon Medina*. First, the ALJ identified each of the treating physicians by name and individually discussed their treatment records and notes when reviewing the medical evidence. (Tr. 373-76). Second, when the ALJ referred to these three treating providers collectively, it was because the lack of objective evidence and inconsistencies he found were directly applicable to each opinion. He did not state that he saw some problems with one doctor's assessment and other problems with that of another. If he had done so, the Court agrees that he would have needed to clarify that reasoning.

As previously observed by Judge Curtin, the reason an ALJ must comprehensively explain his reasoning before rejecting a treating physician opinion is that "this requirement greatly assists our review of the Commissioner's decision and 'let[s] claimant understand the disposition of their cases.'" *Halloran*, 362 F.3d at 33 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Here, the ALJ has provided a comprehensive explanation and good reasoning for not giving controlling weight to the opinions of plaintiff's treating physicians. This Court has a basis to review the ALJ's decision and plaintiff has received

an adequate explanation of his assessment. Thus, the ALJ's findings relative to the opinion evidence are supported by substantial evidence and do not constitute legal error.

### b. *Characterization of Evidence to Reject Treating Physician Opinions*

Plaintiff also contends that the ALJ based his rejection of the opinions of plaintiff's treating physicians on a mischaracterization of the evidence in the record. Despite plaintiff's claims to the contrary, this Court sees no evidence that the ALJ "mischaracterized" or "cherry-picked" evidence from the treatment notes of Drs. Grant, Lewis, or Matteliano. The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts. *See Richardson*, 402 U.S. at 399. An ALJ may reject portions of a medical opinion not supported by the objective evidence of record while accepting those portions that are supported by substantial evidence. *See Veino*, 312 F.3d at 588 (ALJ was free to resolve conflicts of evidence and to credit only portions of a medical opinion which were supported by relevant evidence.)

The record here, like most, contained conflicting evidence, but the ALJ properly carried out his duty to resolve those conflicts. Even though he could have done so differently, his failure to interpret the evidence in the way plaintiff's prefers does not warrant remand. As the Commissioner points out, the ALJ reviewed the treatment notes and summarized that aspects of plaintiff's functionality, such as gait and straight leg raise, were *generally* normal. (Tr. 376) (emphasis added). He further acknowledged evidence of "reduced range of motion and tenderness in [plaintiff's] cervical spine, lumbar spine, and right shoulder," but characterized these as "mild positive [examination] findings." The objective treatment records plainly support this characterization. For example, Dr. Matteliano's observed reduced range of motion in plaintiff's lumbar and cervical spine

13

without evidence of motor weakness and with improved function after pain control. (Tr. 375). As further explained above, the Court finds that the ALJ's assessment of plaintiff's RFC is supported by substantial evidence.

c. *Development of the Record*

Plaintiff next argues that the ALJ failed to fully develop the record by not contacting plaintiff's treating physicians for clarification of their opinions before rejecting them. Plaintiff contends that the ALJ was wrong to reject the opinions of plaintiff's treating physicians, in part, because they "did not articulate how the claimant's medical impairments limit his ability to perform specific work tasks such as sitting, standing, walking, and lifting." To the extent the ALJ needed clarification of the functional limitations expressed in the opinions of Dr. Grant or others, plaintiff argues that he was required to re-contact them. The Court disagrees.

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotations and citations omitted). The regulations direct that if an ALJ finds the record inconsistent or insufficient, he may choose among several actions to try to resolve the inconsistency or insufficiency. *See* 20 C.F.R. §404.1520b(b). Specifically, the ALJ may re-contact a medical source, request additional existing evidence, ask the claimant to undergo a consultative examination, or ask the claimant or others for additional information. *See* §404.1520b(b)(2)(i)-(iv); *see also Gross v. Astrue*, 12-CV-6207, 2014 U.S. Dist. LEXIS 63251, at *54 (W.D.N.Y. May 7, 2014) (holding that when facing an

incomplete record, an ALJ should develop it by obtaining a consultative examination, re-contacting a medical source, or having an expert testify at the hearing).

In rendering this decision, the ALJ had before him a considerable record, including lengthy treatment records, objective evidence, and multiple opinions from independent medical examiners. Notably, the independent examination opinions of Drs. Brothman, Nunez, and Hausman contained specific functional assessments which the ALJ relied on in formulating the RFC. (Tr. 377). Hence, there was no "clear gap" in the record before him. The ALJ is under no obligation to seek additional information to advance a benefits claim where there are no obvious gaps in the administrative record and the ALJ already possesses a complete medical history. *See Quinn v. Colvin*, 199 F. Supp. 3d 692, 709 (W.D.N.Y. 2016) (citations omitted). Moreover, even if there was a gap, the ALJ is not always required to re-contact a medical source. He is entitled to use the other avenues provided by the regulations to resolve inconsistencies or insufficiencies in the record, as can be done with the opinions of consultative examiners.

Plaintiff cites *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 (W.D.N.Y. 2018), and *Zongos v. Colvin*, 5:12-1007, 2013 U.S. Dist. LEXIS 185542, at *24 (N.D.N.Y. Oct. 29, 2013), *adopted by* 2014 U.S. Dist. LEXIS, 23943 (Feb. 25, 2014), for the premise that an ALJ is required to re-contact a physician for clarification before rejecting his opinion for vagueness or not containing clear information. The case at bar is distinguishable because the ALJ did not reject the opinions for being vague or unclear; he simply noted that the treating providers "did not articulate how the claimant's impairments limit his ability to perform specific work tasks […]." (Tr. 376-77). This does not indicate, as plaintiff submits, that the ALJ found any portion of their opinions unclear or ambiguous and in need of

clarification. It conveys only that they had not provided useful function-by-function assessments. The ALJ properly relied on the examining physician opinions for those assessments instead. Thus, remand is not warranted on this point.

        d. _Staleness of Opinion Evidence_

Last, plaintiff argues that the ALJ impermissibly based the RFC finding on stale medical opinions. The contested opinions are those of Drs. Brothman, Nunez, and Hausmann, which were given in March 2010, October 2011, and November 2012, respectively.

"Medical source opinions that are conclusory, stale, and based on an incomplete medical record are not considered substantial evidence to support an RFC determination. _Camille v. Colvin_, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), _aff'd_ 652 F. App'x 25 (2d Cir. 2016). A medical opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." _Clute ex rel. McGuire v. Comm'r of Soc. Sec._, 18-CV-30, 2018 U.S. Dist. LEXIS 215156, at *12 (W.D.N.Y. Dec. 21, 2018). The mere passage of time does not render an opinion stale, rather it is stale if subsequent treatment notes indicate a claimant's condition has deteriorated. _See Whitehurst v. Berryhill_, 16-CV-1005, 2018 U.S. Dist. LEXIS 137417, at *11-12 (W.D.N.Y. Aug. 14, 2018).

Here, the medical evidence in the record shows that plaintiff's condition did not worsen, and may have in fact improved, in the time following the examiners' opinions. Although their opinions were each rendered before plaintiff underwent one or more medical procedures, including cervical disc replacement, shoulder arthroscopy, and cervical disc fusion, and prior to a car accident, subsequent treatment records from 2015

indicate that plaintiff reported that his pain was "manageable," his symptoms were "definitely tolerable," and that his fusion surgery had improved his pain. (Tr. 376, 585, 590, 598). These opinions were thus not stale and the ALJ was justified in basing his RFC determination on them. *See Whitehurst,* at *12 (finding that a consultative examiner's opinion was not stale where the record showed no meaningful deterioration following the doctor's examination); *Carney v. Berryhill,* 16-CV-269, 2017 U.S. Dist. LEXIS 72784, at *17-18 (W.D.N.Y. May 12, 2017) (medical opinion not considered stale where there was no evidence that plaintiffs condition deteriorated after the opinion was rendered, and the opinion was consistent with the record as a whole); *see also Szefler v. Comm'r of Soc. Sec.,* 2019 U.S. Dist. LEXIS 149406, at *25 (W.D.N.Y. Sept. 3, 2019) ("The ALJ appropriately evaluated the medical opinions through the lens of the evidence available to the examiners at the time, as well as in the context of the evidence offered since the opinions were authored, and formulated an RFC based on his consider of the record as a whole.")

Accordingly, this Court holds that the ALJ's decision was based on proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:          February ___, 2021
                Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge